**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Felipe GUTIERREZ, Defendant–Appellant.**

**No. 90–50204.**

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 2, 1992 *.

Decided April 1, 1993.

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a); 9th Cir.R. 34–4.

Joseph T. Vodnoy, Los Angeles, CA, for defendant-appellant.

Sally L. Meloch, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: D.W. NELSON, HALL and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Felipe Gutierrez was convicted of possession with intent to distribute approximately 243 grams of cocaine within 1000 feet of a school in violation of 21 U.S.C. §§ 841(a)(1) & 860 (formerly § 845a). Gutierrez appeals the district court's failure to grant his motion to dismiss for selective prosecution, and its failure to instruct the jury on the lesser included offense of simple possession. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

### I.

On September 13, 1989, Los Angeles Police Department officers conducted a search of Pedro Calzada's home, which was located within 1000 feet of a school. This search was a parole search authorized by the Parole Board of California. The officers forcibly entered the house and found Calzada pouring cocaine down the toilet. The officers then arrested Calzada and asked him to cooperate in an effort to arrest his supplier. Calzada agreed to cooperate.

Calzada arranged over the phone to purchase some cocaine. Shortly thereafter, Felipe Gutierrez arrived at Calzada's house. The LAPD officers arrested Gutierrez and found that he was carrying 243 grams of cocaine base. The officers also verified that the telephone number used by Calzada to arrange the transaction corresponded to a beeper worn by Gutierrez.

The LAPD officer in charge of the searches and arrests of Calzada and Gutierrez was Detective James Warren. Warren was familiar with the federal narcotics law because for a three month period earlier in the year, Warren had been assigned to the United States Attorney's office as an investigating officer on the "Schoolyard Program," a joint effort by federal and local officials to investigate drug transactions occurring within 1000 feet of a school. From this experience, Warren realized that Gutierrez could be prosecuted under federal law because of the type and quantity of the cocaine seized. Warren testified that the amount of drugs involved, not the location of the transaction relative to the school, influenced his decision to recommend federal prosecution.

Gutierrez was indicted for possession with intent to distribute cocaine within 1000 feet of a school. Gutierrez moved to dismiss the indictment for selective prosecution, or in the alternative to obtain discovery and an evidentiary hearing. Gutierrez argued that he was prosecuted because of his Hispanic background. The district court found that Gutierrez failed to present evidence of similarly situated Caucasians who were not prosecuted, and therefore denied the motion.

At trial, Gutierrez requested a jury instruction on the lesser included offense of

possession. The court denied this request, finding that there was no evidence that Gutierrez possessed the drugs for any reason other than distribution. Gutierrez was convicted, and this appeal followed.

## II.

The parties disagree as to the standard of review over a defendant's failure to establish a prima facie case of selective prosecution. We hold that the standard of review for this element of the selective prosecution inquiry is clear error.

■■■ To establish a prima facie case of selective prosecution, a defendant must show both (1) that others similarly situated have not been prosecuted, and (2) that the prosecution is based on an impermissible motive, i.e. discriminatory purpose or intent. *United States v. Bourgeois*, 964 F.2d 935, 938 (9th Cir.1992). These are essentially factual showings. *See United States v. Wilson*, 639 F.2d 500, 503 n. 2 (9th Cir.1981) (selective prosecution is essentially a factual inquiry); *see also Services Employees Int'l. v. Fair Political Practices Comm'n.*, 955 F.2d 1312, 1317 n. 7 (9th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992) (whether a law discriminates is a factual question); *United States v. McConney*, 728 F.2d 1195, 1203 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) (state of mind is essentially a factual inquiry). In *United States v. McConney* we held that when a legal standard provides for a strictly factual test, the standard of review should be clear error. *McConney*, 728 F.2d at 1203–04. Thus, under *McConney*, the standard of review over the establishment of a prima facie case of selective prosecution is clear error. This holding is

well supported in our cases. *See, e.g., United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir.1986); *United States v. Christopher*, 700 F.2d 1253, 1258 (9th Cir.), *cert. denied*, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983); *United States v. Taylor*, 693 F.2d 919, 923 (9th Cir.1982); *United States v. Wilson*, 639 F.2d 500, 503 n. 2 (9th Cir.1981).

Our holding in *United States v. Moody*, 778 F.2d 1380 (9th Cir.1986), *amended*, 791 F.2d 707 (9th Cir.1986) is not to the contrary. The court in *Moody* refused to decide whether the failure to establish a prima facie case of selective prosecution should be reviewed for clear error or abuse of discretion since the defendant could not meet either standard. Despite this noncommittal holding, *Moody* is consistent with our opinion here. The court in *Moody* first observed that "several decisions" have applied an abuse of discretion standard, citing *United States v. Griffin*, 617 F.2d 1342, 1349 (9th Cir.), *cert. denied*, 449 U.S. 863, 101 S.Ct. 167, 66 L.Ed.2d 80 (1980), and *United States v. DeMarco*, 550 F.2d 1224, 1228 (9th Cir.), *cert. denied*, 434 U.S. 827, 98 S.Ct. 105, 54 L.Ed.2d 85 (1977). *Moody*, 778 F.2d at 1385. Both of these cases, however, involved the entirely different claim of *vindictive* prosecution.[1] The cases cited by *Moody* which used a clearly erroneous standard of review, on the other hand, involved selective prosecution claims. *See United States v. Wayte*, 710 F.2d 1385, 1388 (9th Cir.1983) (district court's finding of selective prosecution was clearly erroneous), *aff'd*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *United States v. Thurnhuber*, 572 F.2d 1307, 1310–11 (9th Cir.1977).[2] Thus, *Moody* supports the conclusion that selective prosecution claims should be reviewed for clear error. *Cf.*

---

1. Vindictive prosecution claims challenge an increase in charges by a prosecutor after the defendant has asserted some sort of procedural right, *see, e.g., Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), whereas selective prosecution claims challenge the prosecution of one person in light of the failure to prosecute other similarly situated people.

2. The defendant in *Thurnhuber* brought a vindictive prosecution claim, but the appellate court refused to consider it since there was no link between the exercise of a procedural right and the "penalty." *Thurnhuber*, 572 F.2d at 1310. The court therefore concluded that the defendant's allegations "must rest on an improper motive other than retaliation," *id.* at 1311, and cited several selective prosecution cases, such as *United States v. Scott*, 521 F.2d 1188 (9th

*Bourgeois,* 964 F.2d 935, 937 ("[t]he decisions the *Moody* opinion cites as utilizing a clearly erroneous standard ... involve determinations on the merits of the defendants' [selective prosecution] claims").

We note however, that this case, and most others involving selective prosecution, only involves the failure to establish a prima facie case of selective prosecution. For this reason, we limit our holding to the failure to establish a prima facie case of selective prosecution. We do not comment on the standard of review for the next two elements of the selective prosecution inquiry, the government's rebuttal to the prima facie case, and the district court's ultimate decision to dismiss for selective prosecution.

### III.

■ Although the government retains broad discretion as to whom to prosecute, its discretion is not unfettered. *Bourgeois,* 964 F.2d at 938. A defendant cannot be convicted if the defendant proves unconstitutional discrimination in the administration of a penal statute. *Id.* This case involves such a claim rather than one for discovery or an evidentiary hearing.

■ As mentioned above, to successfully bring a claim, a defendant bears the burden of showing both (1) that others similarly situated have not been prosecuted, and (2) that the prosecution is based on an impermissible motive. *Bourgeois,* 964 F.2d at 938. With respect to (1), the court should isolate the factor allegedly subject to the impermissible discrimination so that the similarly situated class is analogous to the defendant without the one impermissible factor. *United States v. Aguilar,* 883 F.2d 662, 707 (9th Cir.1989) (large organized smugglers of illegal aliens operating for profit similarly situated to defendant which was large organized "sanctuary movement").

Cir.1975), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976). Thus, the court in *Thurnhuber* considered the defendant's vindic-

■ The second factor, improper motive, is essentially the requirement of a showing of discriminatory purpose or intent. *Wayte v. United States,* 470 U.S. at 608, 105 S.Ct. at 1531. Discriminatory purpose implies more than intent as awareness of consequences. *Id.,* 470 U.S. at 610, 105 S.Ct. at 1532. It implies that the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group. *Id.* The identifiable group is typically a race, religion, or group of persons exercising a constitutional right. *Id.,* 470 U.S. at 608, 105 S.Ct. at 1531.

■ Gutierrez argues that the district court failed by not finding that he had established a prima facie case of selective prosecution. With regard to the first requirement Gutierrez claims that blacks and Hispanics are singled out for prosecution under 21 U.S.C. §§ 841(a)(1) & 860, and that similarly situated Caucasians are not prosecuted. Gutierrez supports this argument by citing statistics which ostensibly show that only 4 non-minority suspects were arrested within 1000 feet of a schoolyard and none were prosecuted in federal court.

This showing is insufficient to establish the first prong of the selective prosecution requirement. Gutierrez argues that the similarly situated class should be all drug traffickers who violate 21 U.S.C. §§ 841(a)(1) & 846. Even if this were the appropriate class, Gutierrez offers no evidence that, over a reasonable period of time, the government is declining to prosecute similarly situated Caucasian drug offenders. His evidence indicates only that there are more blacks and Hispanics being prosecuted than Caucasians. Statistics showing a high percentage of certain groups being prosecuted, alone, are insufficient to establish that similarly situated persons are not being prosecuted. *See United States v. Huff,* 959 F.2d 731, 735 (8th Cir.1992) (statistics showing 87% of

tive prosecution claim as a selective prosecution claim and applied a clearly erroneous standard.

people arrested are African–Americans would be insufficient to establish prima facie case). Gutierrez does not point to a policy which allows that similarly situated Caucasians not be prosecuted. *See United States v. Steele*, 461 F.2d 1148 (9th Cir. 1972) (policy of prosecuting only those who protest census shows that similarly situated class not asserting first amendment rights are not prosecuted). Thus, Gutierrez cannot establish the first prong of the selective prosecution inquiry.

Even if he could, Gutierrez cannot prevail because he cannot establish the second prong of the inquiry. Gutierrez argues that the government had discriminatory intent in prosecuting him, and cites evidence showing that the government targeted predominantly black and Hispanic neighborhoods under its Schoolyard Program. Gutierrez, however, was not prosecuted under the Schoolyard Program, but rather was referred to prosecution by an LAPD officer who had once worked in the Schoolyard Program. Thus, the evidence of the target areas for the Schoolyard Program is not relevant to the purpose of prosecuting Gutierrez.

Finally, there is evidence in the record that race did not play a part in the decision to prosecute. It appears that the district court accepted this evidence, and that the court did not clearly err in doing so.

■ Gutierrez also argues that the schoolyard statute should be reviewed under strict scrutiny. Gutierrez is correct that under equal protection standards, racial and ethnic classifications should be reviewed under strict scrutiny. *See Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). However, prior to applying strict scrutiny, a court must determine that a distinction has been made on race or ethnic origin. Gutierrez has failed to establish a racial or ethnic classification.

## IV.

■ We review the failure to allow jury instructions on lesser included offense for abuse of discretion. *United States v. Pedroni*, 958 F.2d 262, 267–68 (9th Cir.

1992); *United States v. Linn*, 880 F.2d 209, 217 (9th Cir.1989). Discretion with formulating jury instructions lies with the district court. *United States v. Pace*, 833 F.2d 1307, 1314 (9th Cir.1987), *cert. denied*, 486 U.S. 1011, 108 S.Ct. 1742, 100 L.Ed.2d 205 (1988). So long as the instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions is a matter of discretion. *Id.*

■ Entitlement to an instruction on lesser included offenses exists only if the theory is supported by law and has some foundation in the evidence. *Id.* Entitlement turns on a two step process. First, the defendant must identify the lesser included offense. Second, the defendant must demonstrate that a rational jury could find the defendant guilty of the lesser included offense but not the greater. *Linn*, 880 F.2d at 218. This second prong has been restated as requiring that a rational jury could not convict a defendant of any lesser offense without relying on the precise evidence which establishes guilt of the offense charged. *Id.*

■ Gutierrez correctly notes that possession is a lesser included offense of possession with intent to distribute. *See* 21 U.S.C. §§ 841, 844, 860; *United States v. Garcia–Duarte*, 718 F.2d 42, 47 (2d Cir. 1983). However, Gutierrez fails to identify a factual basis for this instruction. When there is a large quantity of a drug and other evidence tending to establish distribution, courts have declined to require a possession instruction because in those circumstances, once a jury found possession, it could only rationally conclude that the possession was for distribution. *United States v. Powell*, 932 F.2d 1337, 1342 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 256, 116 L.Ed.2d 210 (1991) (over five kilograms of cocaine). Gutierrez was carrying the equivalent of 6,000 doses of cocaine.

The cases Gutierrez cites in support of the lesser included offense instruction all involve either small amounts of cocaine and/or evidence that the defendant was going to use the cocaine himself. *See United States v. Garcia–Duarte*, 718 F.2d

42 (2d Cir.1983) (.23 grams of cocaine); *United States v. Burns*, 624 F.2d 95 (10th Cir.1980), *cert. denied*, 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980) (evidence that defendant possessed cocaine for own use); *United States v. Brischetto*, 538 F.2d 208, 210 (8th Cir.1976) (evidence for possession stronger than for distribution). The district court did not abuse its discretion in denying the instruction.

## V.

Since Gutierrez cannot show that similarly situated groups are not being prosecuted, his selective prosecution claim must be dismissed. Since there is no evidence that Gutierrez possessed the cocaine for any reason other than distribution, his jury instruction argument must also be rejected.

**AFFIRMED.**

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.

R.App.P. 34(a); 9th Cir.R. 34–4.